FILED
2016 Nov-23  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JENNIFER LYNN HAZEL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| v. | ) | |
| | ) | **2:16-cv-00957-KOB** |
| CIRCLE K STORES, INC., | ) | |
| AND THE PANTRY, INC. d/b/a | ) | |
| KANGAROO EXPRESS, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE § 216(b) NOTICE

s/ Josh C. Harrison
Christopher W. Deering (ASB-5555-I71C)
Josh C. Harrison (ASB-3775-O76H)
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
420 20th Street North, Suite 1900
Birmingham, AL 35203
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
christopher.deering@ogletreedeakins.com
josh.harrison@ogletreedeakins.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

I.     Introduction..................................................................................1

II.    Factual Statement........................................................................2

  A.  Plaintiff's Claims ........................................................................2

  B.  Defendants' Organizational Structure ............................................3

  C.  Each Division has Autonomy to Make Decisions Affecting Store Managers 4

  D.  The Gulf Coast Division....................................................................6

    1.    The store type impacts the Store Manager's responsibilities. ..................7

    2.    Training of employees by Store Managers within the Gulf Coast Division differs significantly, and for some Store Managers, training is a significant additional responsibility....................................................................10

    3.    Store Manager's daily responsibilities depend, in part, on the market manager....................................................................11

    4.    The Store Manager's daily job activities depend on their own performance, abilities and initiative....................................................................12

      a.    Hiring ....................................................................13

      b.    Scheduling....................................................................14

      c.    Discipline & employment terminations....................................................................14

       d.     Additional discretionary responsibilities of the Store Manager. ..........15

III.    Argument and Analysis .................................................................17

  A.  The FLSA's Overtime Requirements And Exemptions................................17

  B.  Legal Principles Applicable To Collective Actions Under The FLSA.........18

    1.     The District Court has discretion to deny conditional certification.........18

    2.     Plaintiff's burden in a motion for conditional certification. ....................19

  C.  Plaintiffs do not meet their burden of showing a reasonable basis other similarly situated employees exist.......................................................................20

    1.     Plaintiff is wrong about Defendants' pay practices and management.....21

    2.     Based on the Store Managers unique and different job responsibilities, Plaintiff's allegation that they all are "exempt" does not establish a common pay plan. .........................................................................................................22

    3.     The Experiences of the Store Managers widely differ and will require an Individualized Assessment................................................................................24

      a.     The very nature of Plaintiff's claims are not compatible with collective actions. ..........................................................................................................24

      b.     Circle K is uniquely decentralized with divisions making their own respective decisions regarding pay practices.................................................27

c.      The type of store significantly impacts a store manager's job responsibilities. ................................................................29

d.      A Store Manager's own performance and market manager impacts their autonomy. ................................................................29

e.      The Gulf Coast Division's decision to re-classify the remaining Store Managers paid on a salary basis is not evidence of a common practice to justify conditional certification ................................................................30

4.      Alternatively, Plaintiff's Class Should be Limited to  Alabama. ............31

E.   Response to Plaintiff's Notice ................................................................32

1.   Notice Procedure ................................................................32

2.   The Notice Period ................................................................34

3.   Posting the notice. ................................................................34

IV.   Conclusion ................................................................35

## I.   <u>Introduction</u>

Based on the declarations of four Alabama store managers (Doc. 22-2-Doc. 22-5) (and the complaint allegations of the named-plaintiff), Plaintiff seeks a nationwide FLSA collective action contending Circle K misclassified all of its store managers as exempt from the FLSA's overtime requirements. Specifically, Plaintiff alleges:

> Defendant, across all of its locations, improperly classified store managers as exempt from the overtime requirements of the FLSA. Then, in March 2016, Defendant changed its method of paying store managers to hourly and began paying them overtime pay. In other words, Defendant itself has treated the store managers as a uniform class in regard to its compensation policies, practices, and procedures.

(Doc. 22, p. 160).  The five Alabama store managers, however, are simply wrong about Defendants' alleged pay practices.   Unlike the Complaint's allegations, during the relevant period (June 2013-June 2016), Defendants did *not* classify all Store Managers as FLSA exempt, and Defendants did *not* convert all Store Managers to non-exempt status in April 2016.   In fact, Store Managers in California (the West Coast Division) have been paid hourly since 2002-2003 (Tab 3-Declaration of Sandra Farthing, at ¶6), and The Pantry (Kangaroo Express) Store Managers' compensation structure depended upon several factors, including the average amount of non-exempt hours the store manager managed, with some Store Managers being paid hourly and others on a salary basis for years before April

1

2016.  (Tab 4-Declaration of Desire Shiffer, ¶5).  Because Plaintiff's entire motion hinges upon a misunderstanding of Defendants' policies and practices, the motion should be denied *ab initio*.

Not only has Plaintiff not met her burden, but the record demonstrates that Defendants operate in a highly decentralized fashion and store managers' compensation and experiences differ wildly from Division to Division, Market to Market, and Store to Store.  Indeed, there are instances, for example, where a Circle K store manager oversees the operation of a store with over $10 million a year in fuel sales alone. (Tab 15-Declaration of LeeAnn Scott, at ¶15).  Because the very nature of this type of claim (i.e. misclassified as exempt under the FLSA) requires an individualized, highly fact-specific analysis of daily responsibilities, and the record reflects that a common compensation structure or common management practice did not exist throughout the Circle K national footprint, Plaintiff's Motion should be denied.  The limited experience of five store managers in Alabama should not open the door to a nationwide collective action under current law.

## II.   <u>Factual Statement</u>

### A. Plaintiff's Claims.

Plaintiff, Jennifer Hazel, is a former Pantry Store Manager that was also briefly employed by Circle K as a Store Manager. (Doc. 1 ¶1).  Opt-in Plaintiffs,

Patsy Carlton, Donna Head, Karen Stokley, and Alisa Sheats are current store managers of Circle K. (Doc. 22 p. 4).  These four opt-in Plaintiffs have never been employed by The Pantry. (*Id.*) All five Plaintiffs were solely employed in Alabama.  (Doc. 1 ¶1; Doc. 22 p. 4).  Plaintiff seeks conditional certification of a collective action under the FLSA. Plaintiff alleges that she is similarly situated to Defendants' current and former Store Managers on a nationwide basis and that Defendants misclassified all the Store Managers as exempt employees.

### B. Defendants' Organizational Structure.

Circle K currently operates thousands of stores across the United States that are divided into multiple divisions, such as the Gulf Coast Division (where Plaintiff and the opt-ins were employed), the West Coast Division, the Southwest Division, the Florida Division, and the South Atlantic Division.[1]  Each Division is led by a Vice President that manages multiple directors or departments.  (*See* Tab 1-Declaration of Troy Beatty ¶ 6; Tab 2-Declaration of Joyce Clemmons ¶6; Tab 5-Declaration of Christie O'Halloran ¶ 6; Farthing ¶7).  Each Division is supported by a human resources team, led by a Director of Human Resources. (Clemmons ¶7).

---

[1]     Other divisions are identified on Circle K's website:   http://www.circlek.com/ Representatives of the Divisions identified above submitted declarations in opposition to Plaintiff's motion.

### C. Each Division has Autonomy to Make Decisions Affecting Store Managers.

The Vice President of each Division is ultimately responsible for the success of the Division. (Clemmons ¶6).  Each Division has authority to independently operate the Division and exercise discretion on critical operational topics, such as job requirements and expectations of employees, compensation for employees, and training programs for employees. (Beatty ¶19 (store manager training topics); Farthing ¶19 (store manager compensation); (O'Halloran ¶7 (store manager job responsibilities)).

A prime example of this respective independence is the compensation of store managers. For store managers employed by The Pantry, some were compensated on an hourly basis and others were classified as exempt, depending upon a number of factors, including the number of non-exempt hours that the manager supervised. (Shiffer ¶5).[2] In California, Circle K has paid store managers on an hourly basis since 2003. (Farthing ¶6).  Moreover, within the West Coast Division, the compensation plan for Store Managers vary state to state, county by county, or city by city based on the various, multiple different state wage laws. (Farthing ¶19).

---

[2]      Before March 2015, Circle K and The Pantry were two separate corporate entities and operated independently. In approximately March 2015, Circle K acquired The Pantry. (Shiffer ¶4).  Many employees of The Pantry became employees of Circle K. (*See id.*)

Each Division within the company sets its own bonus structure for Store Managers, which differs significantly, as demonstrated by the following chart:

| Type | Gulf Coast (Clemmons Ex. C) | Southwest (Beatty Ex. A) | West Coast (Farthing Ex. A) |
|------|------|------|------|
| Forfeit Provisions | Forfeits if a restricted sale occurs | Forfeits if: (1) budget is not made; or (2) restricted sale. | Forfeits 50% of bonus if any disciplinary action resulting in suspension occurs. |
| Factors Considered | (1) Food service growth; (2) Mystery shop and in-stock store; (3) turnover; (4) budged labor; and (5) combined variations, including merchandise, cash, fuel, etc. | (1) Sales, Shrink, salaries, service, and store contribution compared to budget; (2) 100% in-stock execution; (3) Compliance with safety and fuel. | (1) Merchandise sales at or above budget; (2) Salary dollars at or below budget; (3) Employee development. |
| Kicker bonus | Yes | No | Yes |
| Car Wash Bonus | No | No | Yes |
| Other | Total annualized bonus potential of $12,000. | Total annual bonus potential of $8,000. | Bonus varies based on the classification of stores and location of store. Total annual bonus potential for "A" stores: $12,700. |

Additionally, each Division is responsible for making adjustments to comply with state laws within their divisions, and these decisions impact the Store Manager's responsibilities. For example, in the Southwest Division, all 360 stores participate in lottery sales, and Store Managers must ensure that each employee on

her staff is trained on lottery procedures, from the issuance of lottery tickets to the redemption of lottery winnings and lottery audits. (Beatty ¶12). In the Gulf Coast Division, on the other hand, not all stores participate in lottery sales based on state laws of Alabama and Mississippi. (*see* Clemmons ¶9).

> As one Market Manager who worked in multiple divisions explained:
>
> "In my experience, each Division operates essentially as its own company with different marketing, inventory, register systems, and human resource system. Additionally, each Regional Operations Director within each Division has different expectations for Market Managers and each Market Manager has different expectations for store managers."

(Tab 8-Declaration of Phyliss Couch, ¶ 8).

### D. The Gulf Coast Division.

Plaintiff and the opt-ins are either current or former Circle K employees in the State of Alabama. In addition to Alabama, the Gulf Coast Division operates in multiple other states, including Arkansas, Louisiana, Mississippi, the Florida Panhandle, and Tennessee. Clemmons ¶5).

The Gulf Coast Division is led by a Vice President. (Clemmons ¶6). In addition to multiple departments, the Vice President supervises approximately six Region Operations Directors ("ROD"). (*See id.*) The RODs manage multiple market managers (between 7 and 11), and the market managers oversee multiple store managers. (*See id.*; Tab 6-Declaration of Michelle Ward ¶2).

In the Gulf Coast Division, there exist currently 579 stores. Of these stores,

539 operate 24 hours a day, 575 sell gasoline, 145 have car washes, 252 operate a restaurant, 328 participate in lottery sales, 205 are considered high volume stores, approximately 40 are considered "high risk" stores, and 8 are truck stops. (Clemmons ¶9).

Each store is managed by a Store Manager, who serves as the highest-ranking store employee and is responsible for the overall performance of the store. (Tab 10-Declaration of Don Pannell ¶6; Scott ¶¶7, 9; Tab 12-Declaration of Nancy Hall ¶6; Tab 13-Declaration of Sue Ann Hall ¶6). A critical trait of a successful Store Manager is the ability to delegate tasks to Store Assistants and Customer Service Representatives ("CSRs"). (Scott ¶5 ("I believe my store is only as strong as its employees and one of my primary responsibilities is to delegate tasks rather than attempting to do it all myself."); Tab 7-Declaration of Melinda Clark ¶3 (noting that when she was promoted to store manager "my primary duties changed."); Tab 17-Declaration of Glenda Bohnet ¶3 ("I do any other tasks my [store manager,] Ben assigns to me.")).

### 1. The store type impacts the Store Manager's responsibilities.

The stores, which range from 160 square feet to over 4,000 square feet, are significantly different in the services offered to customers. (O'Halloran ¶8). These differences impact the percentage of time a Store Manager devotes to each task.

| Service | Additional Responsibilities. |
|---|---|
| 24-hour-a- | If open 24 hours, additional staffing required; if not open 24 hours, |

| *Service* | *Additional Responsibilities.* |
|---|---|
| day | additional opening and closing responsibilities. (Beatty ¶9; Clemmons ¶10).[3] |
| Car Wash | Managing the operations of the car wash, including maintenance and inventory supplies. (Beatty ¶10; Clemmons ¶11). |
| Restaurant | The additional responsibilities depend on whether it is a quick-serve, which is operated by a different management structure within the Circle K Florida Division or simply a deli. (O'Halloran ¶ 10).[4] |
| Lottery | Training employees on lottery procedures. (Clemmons ¶13). |
| High Volume | Additional employees and staffing due to higher volume.  Managing inventory and scheduling is more difficult. (Scott ¶15; Clemmons ¶14). |
| High risk | Managing cash and inventory is more difficult.  High risk stores often have higher levels of turnover.  Some store managers request security for high risk stores. (Clemmons ¶15; Farthing ¶ 12). |
| Truck Stops | Additional responsibility of more complicated bookkeeping due to diesel sales and additional inventory responsibilities. (Beatty ¶14; Clemmons ¶16). |

Store Manager LeeAnn Scott's experience as a Store Manager of a high volume store in Mississippi is a good example.  Scott operates a multi-million dollar convenience store that includes a truck stop, restaurant, freight scales, showers, and an overnight parking facility. (Scott ¶15).   The store averages approximately $200,000.00 *per week* in diesel sales alone. (*Id.*)   The store's inventory is significantly larger than other Circle K stores, and Scott manages a proportionally large number of employees. (*Id.*)   Based on the store type, Scott

---

[3]    Contrary to Plaintiff's allegation, all of Defendants stores do not operate 24 hours a day. (Doc. 22 p. 2).

[4]    The Southwest and Florida Division stores operate restaurants of varying degrees, ranging from almost full-service, to self-serve, to Subway operations. (Beatty ¶11; O'Halloran ¶10).  The scope of the food service operation requires different food service programs and inventory. (Beatty ¶11).  And whether it is the responsibility of the Store Manager in the Florida Division, depends on whether it is a quick-serve restaurant. (O'Halloran ¶10).

explains she must focus more on training employees and managing employee turnover than other tasks. (*Id.*)  Scott estimates that at most 20% of her time is performing what she considers to be "manual" tasks.  (Scott ¶25).

Sue Ann Hall, a store manager in Dothan, Alabama, manages a relatively high volume store that is also a truck stop. (S. Hall ¶15).  Hall focuses her time more on monitoring of cash, video surveillance, loss prevention, and managing the Trendar system, which is a payment system specific to diesel truck drivers.  *Id.* Hall spends less time on inventory.  *Id.*

On the other hand, Nancy Hall, a store manager, explains that her store is not high volume.  (N. Hall ¶15).  The majority of her time **is** managing inventory and ensuring that the store is running properly.  (*Id.*)  Nancy Hall previously worked in a high volume store and explained that she had less time to focus on inventory at the high volume store.  (*Id.*)

In addition to store type, each unique Circle K store location impacts the Store Manager's daily responsibilities and job duties.  Store Manager David Malone explains that his store, located near a university in Oxford, Mississippi, encounters legal compliance challenges concerning alcohol and tobacco sales. (Tab 14-Declaration of David Malone ¶15).  HRM Beatty identified one store in Northeast Oklahoma that is located near a lake.  The Store Manager has the added responsibility of complex staffing and inventory management because the store is

significantly busier in the summer months than the winter months. (Beatty ¶16). Market Manager Pannell has a high risk store that is located in a high crime area. That particular Store Manager focuses more time on cash monitoring, video surveillance, and inventory. (Pannell ¶10). Market Manager Ward adds that some high risk stores have overnight security guards that the Store Manager must interact with. (Ward ¶10; Farthing ¶12).

### 2. Training of employees by Store Managers within the Gulf Coast Division differs significantly, and for some Store Managers, training is a significant additional responsibility.

New hire training differs depending on the location of the store. For new hires at stores in a remote location, training may occur at the assigned store. (Pannell ¶9). For the majority of new hires, the training is conducted by a training store. (Scott ¶15). The number of training stores differs by market. (Couch ¶¶2, 9 (identifying 3 training stores in a 12 store market); (Pannell ¶¶2, 9 (identifying 1 training store in a 12 store market.)).[5]

In training stores, the Store Manager there has the additional responsibility of training newly hired CSRs or Store Managers. (Couch ¶9; Malone ¶10). In Pannell's market, the training Store Manager receives additional compensation for training a store manager. (Pannell ¶9).

---

[5]   In the West Coast, pre-approved and certified mentors train new employees. (Farthing ¶16). In the Florida Division, Store Managers are expected to "conduct significant on-the-job training covering store specific requirements." (O'Halloran ¶14).

Ben Fortin, a Store Manager in Mississippi, manages a training store. (Tab 11-Declaration of Ben Fortin ¶5). He trains as many as three managers in training ("MIT") at a time. This training is in addition to his typical responsibilities as a Store Manager. (*Id.*) To boot, Fortin is also the Assistant Market Manager for his market, which means he has additional supervisory responsibilities over the other stores in his market. (Fortin ¶4).

After new hire training, Store Managers are ultimately responsible for training all employees within his or her store. (Scott ¶10). Store Managers must use their discretion and independent judgment to provide additional training to employees on an as-needed basis. (Scott ¶10; Hall ¶10; Couch ¶9 ("Often times, Store Managers conduct the training sessions on topics determined appropriate and necessary by the individual Store Manager.")).

### 3. Store Manager's daily responsibilities depend, in part, on the market manager.

How market managers treat the Store Managers significantly impacts the Store Manager's daily job tasks and responsibilities. Most market managers provide Store Managers total autonomy and responsibility for their individual store. (Couch ¶4 ("I expect each Store Manager to treat their individual store as if it were their own business and encourage Store managers to take an entrepreneurial or ownership approach to the management of their stores.")). Other market managers explain that the level of oversight depends on a number of factors, such

as the location of the store, the category of the store (i.e. high volume or low volume) and the strength of the Store Manager.  (Pannell ¶4 (explaining that if a store manager has high employee turnover or customer complaints, he may visit that store more than stores that are meeting expectations)); Tab 9-Declaration of James Newman ¶4 ("While I tend to be more hands-on with newer or less experienced Store Managers, I prefer to teach Store Managers the necessary skill sets to perform their jobs independently and intervene in the day-to-day management of the stores only when necessary.").

When the market managers visit the Store Manager, typically occurring once a week or once every two weeks, the market managers provide feedback to the Store Managers, but leave it to the Store Manager to determine how to best achieve the store's goals and expectations. (Couch ¶6; Pannell ¶17 ("I encourage my Store Managers to run their store like it is their own company."); Bohnet ¶5 ("[T]he market manager does not instruct me on tasks to complete.")).

### 4. The Store Manager's daily job activities depend on their own performance, abilities and initiative.

A Store Manager is charged with managing all aspects of running the store. (S. Hall ¶6).  Store Managers consider themselves to be members of Circle K management.  (S. Hall ¶24; Scott ¶24; N. Hall ¶23; Malone ¶24).  And while they may engage in manual tasks at times within the store, as Plaintiff has alleged, the

primary responsibility of the Store Manager is overseeing store operations.  (S. Hall ¶25; Scott ¶25; N. Hall ¶24; Malone ¶25).

### a. Hiring.

Store Managers are responsible for recruiting and hiring.  The Gulf Coast division, for example, does not have centralized hiring. (Clemmons ¶17).  Some Store Managers are authorized to make hiring decisions independently, and other Store Managers make recommendations to the Market Manager.  (Fortin ¶10 ("I am authorized to make hiring decisions for my store independently.");[6] S. Hall ¶10 ("Though I provide recommendations to my Market Manager, I am primarily responsible for hiring decision.")).  The level that the market manager reviews a Store Manager's recommendation may "depend[ ] on the Store Manager's hiring history" and whether the "Store Manager has a history of high turnover." (Newman ¶4 ("The stores in my market have the lowest turnover rate in the division because I focus on training and equipping Store Managers to make the best hiring decisions possible."); Pannell ¶ 8 (noting that he "cannot think of a time that I rejected a hiring recommendation of a Store Manager in [his] market.")). Store Managers' roles in recruiting and making hiring recommendations is critical, as only Store Managers know what their particular store needs.  (Newman ¶4; Scott ¶12 (referencing part-time employees)).

---

[6] In fact, Fortin has also participated in second interviews for candidates in other stores. (Fortin ¶ 10).

### b. Scheduling.

Store Managers are responsible for preparing work schedules for their stores. (Malone ¶12). The Store Managers' own hours and schedules may vary based on their store's needs. (*See* Scott ¶15; Pannell ¶12; Couch ¶10). The number of employees a store has also affects how the Store Manager allocates her time, what tasks she is able to delegate, and what tasks she focuses on while ensuring appropriate coverage for the store. (Scott ¶15; Malone ¶12-14). Store Managers also must manage employees' vacation requests and sick days. (Bohnet ¶ 8).

Store Managers have authority and discretion to "lend" employees to other stores. (Scott ¶12). For example, Sue Ann Hall had to help close a store other than her own and was unable to open her store. (S. Hall ¶12). Hall had her assistants open her store, which required the payment of overtime wages to her employees. (*Id.*) She did not have to obtain approval from her market manager to approve the overtime. (*Id.*; *see also* Malone ¶12) While Store Managers have authority to authorize overtime (Fortin ¶12), Store Managers also have the discretion to utilize part-time employees to reduce or avoid overtime. (Scott ¶12).

### c. Discipline & employment terminations.

Store Managers are also responsible for disciplining all store employees, and making recommendations for termination at their stores. (Fortin ¶11; Scott ¶11; N. Hall ¶11 ("I have issued written discipline for cash shortages, not performing shift

duties, bad customer service, and attendance.")).   While some market managers request notice of the discipline or termination, this is to ensure compliance with any state and/or federal laws. (Clark ¶14; Newman ¶11). Many Store Managers report that their discipline and termination decisions have never been trumped by a market manager (S. Hall ¶11; Scott ¶11), and Market Manager Pannell agrees. (Pannell ¶22).   Store Manager Malone has "terminated employees for legitimate integrity issues and notified [his] Market Manager after the fact." (Malone ¶11).

Store Managers also evaluate and recommend raises and advancements. (Malone ¶10 ("I strive to work with all of my employees … to be promoted whenever possible."); Scott ¶10 ("I strive to push my [ ] employees to reach the next position level."); Bohnet ¶2 ("Ben promoted me to the Lead CSR position.")). Store Managers also prepare employee evaluations and resolve employee and staff grievances or complaints. (Fortin ¶ 11; Bohnet ¶7).

### d. Additional discretionary responsibilities of the Store Manager.

Store Managers are the highest ranking official of the store and set the tone for the store.   Certain Store Managers also describe the following additional discretion and experiences as Store Managers:

- As a store manager, Olajuwan Alexander became a "go to" person for new stores in Baton Rouge. (Tab 18-Declaration of Olajuwan Alexander ¶3).  For a short time, Alexander was the Store Manager for **two** stores at the same time.   (*Id.*)   In 2010, he was promoted to Market Manager and has supervised multiple markets within the company.  (*Id.*)

15

- Fortin's store sells liquor in addition to beer, which requires more focus on compliance, monitoring of cash, video surveillance, and loss prevention. (Fortin ¶15).

- To avoid any appearance of favoritism, Malone makes it a practice of involving his market manager in promotion decisions. (Malone ¶ 10).

- Store Managers have discretion to solve customer service issues the way they see fit. (S. Hall ¶17 (issuing customer gas cards, giving away coffees or sodas); Tab 16-Declaration of Kenneth Turner ¶16 (issuing a gift card for fuel credit to satisfy a customer); N. Hall ¶17 (refunding money or providing an exchange product at the request of a customer); Fortin ¶17 ("When I choose to make an exception to Company policies to solve a customer service issue, I feel it is also important to explain to my employees why the exception was necessary.")).

- Store Managers have discretion to implement incentive programs for their employees. (Scott ¶ 22 (describing Bingo challenges, gift card rewards, and pizza parties for increased sales and performance); Pannell ¶ 12 (explaining that, from a market manager's perspective, a manager that creates a good culture drives positive sales growth)).

Store Managers are also responsible for traditional management tasks that are not performed by CSRs, such as:

- Completing cash reporting daily, without assistance.

- Bank deposits, cash audits, and paperwork associated with cash handling.

- Vendor management.

- Enforcing company policies and procedures.

- Loss prevention and safety procedures, including hosting monthly safety meetings and filling out paperwork related to the same.

16

(Fortin ¶18-21; Scott ¶18-21; Bohnet ¶5 ("Ben is responsible for many tasks that I do not do, such as paperwork bank runs, fuel surveys, new hire documentation…")).

## III.   <u>Argument and Analysis</u>

### A. The FLSA's Overtime Requirements And Exemptions.

Under the FLSA, covered employers must pay employees for hours worked in excess of 40 in a work week "at a rate not less than one and one-half times the regular rate" of pay.  29 U.S.C. §207(a)(1).  The FLSA contains several statutory exemptions from its overtime pay requirements, including the "executive" and "administrative" exemptions. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100; 29 C.F.R. § 541.200.  Relevant to many FLSA exemption cases, an employee can still be exempt even if less than fifty percent of his/her time is spent performing exempt duties; the employee "perform[s] a combination of exempt duties," but does not necessarily fall under specific exemptions; the employee concurrently performs exempt and non-exempt; or the employee performs a substantial amount of manual labor. 29 C.F.R. §§ 541.700(a) (assessing the primary duty requires the Court to place a "major emphasis on the character of the [ ] job as a whole."); 541.700(b); 541.106; 541.708.[7]

---

[7] Numerous courts have held that management is the primary duty even when the employee performs "non-exempt" duties for a large majority of her time.  *See, e.g., Baldwin v. Trailers Inns, Inc.,* 266 F.3d 1104, 1113-1116 (9th Cir. 2001) (managers who spent 90 percent of time on non-management tasks were exempt); *Donovan v. Burger King,* 672 F.2d 221, 226 (1st Cir. 1982)

### B. Legal Principles Applicable To Collective Actions Under The FLSA.

#### 1. The District Court has discretion to deny conditional certification.

The FLSA does not expressly provide for conditional collective action certification or the distribution of judicially approved notice to putative plaintiffs, but permits a collective action where claimants are "similarly situated." *See* 29 U.S.C. 216(b).[8]  Although courts have the authority to conditionally certify and permit notice to a class under Section 216(b) of the FLSA, *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989), that authority should be exercised *only* with discretion and *only* in appropriate cases. *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). Conditional certification is not appropriate when individual issues predominate over collective issues.  Specifically, courts refuse to permit FLSA suits to proceed as collective actions if the individualized inquiries required would

---

("one can still be 'managing' … even while physically doing something else"); *Langley v. Gymboree Operations, Inc.*, 530 F. Supp. 2d 1297, 1301-03 (S.D. Fla. 2008) (primary duty of retail store manager was management, even though plaintiff spent the majority of her time on sales floor); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1328 (N.D. Ga. 2005) (retail store assistant managers were exempt even though 90 percent of their time was spent on non-management tasks); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866-67 (N.D. Tex 2001) (bakery manager exempt even though he spent 90 percent of his time on non-exempt tasks).

[8]     A collective action under § 216(b) differs from a Rule 23 class action in that an individual does not become a party to the §216(b) case unless and until he gives his consent in writing to become a party, i.e. "opts-in" to the action, whereas a party must affirmatively 'opt-out' of a case proceeding as a Rule 23 class action. *See e.g. Anderson v. Cagle's, Inc.,* 488 F.3d 945, 950 (11th Cir. 2007), *cert. denied,* 553 U.S. 1903 (2008).

eliminate "the economy of scale envisioned by the FLSA collective action procedure." *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M. D. Ala. 2004).[9]

### 2.    Plaintiff's burden in a motion for conditional certification.

Courts have used a two-tiered approach to certification of an opt-in class. *See e.g. Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1217, *cert. denied,* 273 F.3d 1118 (11th Cir. 2001). To satisfy this standard, Plaintiff must make—with evidence—"some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Hilley v. Tacala*, 2014 WL 1246364 (N.D. Ala. 2014); *Greenhill v. Wise Alloys, LLC*, 2013 WL 5350662, *7 (N.D. Ala. 2013); *Holt,* 333 F. Supp.2d at 1270.[10]  Courts should allow collective actions only when adjudication of "common issues of law and fact arising from the same alleged ... activity" promotes efficiency and judicial economy. *Hoffman-La Roche*, 493 U.S. at 170; *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (courts have exercised caution in such a way as to avoid "stirring up unwarranted litigation" and noted that "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the

---

[9] As explained by the Supreme Court, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 2551 (2011).

[10]    While Defendants agree the merits are not at issue at the notice stage, facts distinguishing Plaintiff's experiences as a store manager versus the experiences of other store managers is certainly relevant to the similarly situated inquiry. *See Holt*, 333 F.Supp.2d at 1274, n.4

employer's expenses.")  In evaluating the first stage, it is entirely appropriate for the Court to consider the defendant's evidence.  *Holt*, 333 F.Supp. 2d at 1274, n. 4. (concluding it is appropriate to consider the declarations of the defendant's employee store managers and assistant managers in determining whether the case should proceed past stage one of the collective action certification process.)

For the second prong, before facilitating notice, "a district court should satisfy itself that there are other employees…who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  *Morgan v. Family Dollar Stores,* 551 F.3d 1233, 1259-60 (11th Cir. 2008) (*quoting*, *Dybach v. State of Florida Dept. Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

### C. Plaintiffs do not meet their burden of showing a reasonable basis other similarly situated employees exist.

To support a collective action, Plaintiff must produce evidence of some common thread to create a reasonable basis to believe that potential opt-ins are truly similarly situated with respect to job requirements and pay classifications.  To meet this burden, Plaintiff alleges:  (1) all store managers were classified as salary/exempt across all of its locations; (2) Defendants changed the classification from exempt to non-exempt all at once in April 2016; and (3) Plaintiffs' describe their own experiences as a store manager. (*See* Doc. 22-5 ¶6 ("I am speaking about what I did as a Store Manager"); 22-4, ¶6 (same); 22-2 ¶6 (same); 22-3 ¶6 (same)).

As explained below, Plaintiff's allegations do not support their requested relief of a nationwide collective action.  *Greenhill, LLC*, 2013 WL 5350662, *7; *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 567 (N.D. Ala. 1995) ("Plaintiff has to submit evidence establishing at least a colorable basis for [their] claim that a class of similarly situated plaintiffs exist."); *Brooks v. Rainaldi Plumbing, Inc.,* 2006 WL 3544737, *2 (M.D. Fla. 2006) (noting that while the burden at the "notice stage" is relatively low, it is not "invisible.").

### 1.   Plaintiff is wrong about Defendants' pay practices and management.

Plaintiff's reasonable basis for believing similarly situated individuals exist in the proposed class is based on the incorrect assumption that all of Circle K Store Managers were classified as FLSA exempt and salaried.  This alleged common practice simply does not exist.  Instead, Defendants' compensation plans were different based on Division and even different within the Gulf Coast Division.

The Pantry store managers were paid either as hourly or salary based on the assigned store. (Shiffer ¶5).  For those paid hourly, after Circle K acquired The Pantry, Circle K continued paying those employees on an hourly basis.  In fact, by April 2016—the date Plaintiff emphasizes as the day of conversion—a significant number of Store Managers both inside and outside of the Gulf Coast Division were already paid on an hourly basis. (Pannell ¶25; Farthing ¶6 (explaining the majority of Store Managers in California were paid as hourly in 2002-2003 and by April

21

2014, all Store Managers in Washington and Oregon were paid hourly).

Plaintiff's erroneous assumption of Defendants' payroll practices drives home the fact that Circle K does not operate a nationwide, common payroll practice. Instead, the differences in how each Circle K Division has classified and paid their Store Managers—both in terms of salary and hourly, as well as the bonus plans—demonstrate the decentralized nature of Defendants' operations. Because Plaintiff only relies upon a debunked assumption to support Plaintiff's Motion, Plaintiff has not carried her burden to sustain conditional certification here. *Morgan*, 551 F.3d at 1261 ("there must be more than 'only counsel's unsupported assertions that FLSA violations [are] widespread…'"); *Greenhill*, 2013 WL 5350662, *7; *Castle v. Wells Fargo Financial Inc.,* 2008 WL 495705, * 5 (N.D. Cal. 2008) (finding that "plaintiffs have not identified any company-wide policy or practice to deny overtime and thus have failed to show that the various ... employees are similarly situated for purposes of class certification").

> ## 2. Based on the Store Managers unique and different job responsibilities, Plaintiff's allegation that they all are "exempt" does not establish a common pay plan.

Even if Plaintiff's allegations about Defendants pay structure were true (which it is not), Plaintiff still does not carry her burden because simply classifying a group of employees as "exempt" from the FLSA does not establish a common pay plan sufficient to justify an FLSA collective action. *Holt,* 333 F. Supp.2d at

1270 (rejecting plaintiff's argument that classifying store managers as FLSA exempt merits conditional certification because "the 'similarly situated' inquiry … must be analyzed in terms of the nature of the job duties performed by each putative plaintiff…"); *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010) (finding that having a policy of classifying workers as independent contractors cannot, alone, render the class similarly situated for FLSA conditional certification purposes.). ***In fact, employers classifying store managers at convenience stores as FLSA exempt have won summary judgment on claims identical to the claims asserted by Plaintiff.*** *In re Family Dollar FLSA Litigation*, 637 F.3d 508, 519 (4th Cir. 2011)[11] (affirming summary judgment in favor of Family Dollar holding that its store managers were exempt from the FLSA under the executive exemption); *Calvo v. B&R Supermarket, Inc.*, 63 F.Supp.3d 1369 (S.D. Fla. 2014) (granting summary judgment and holding supermarket's assistant managers were FLSA exempt); *Diaz v. Team Oney, Inc.*, 2008 WL 9463871 (S.D. Fla. 2008) (granting summary judgment to employer and holding assistant

---

[11]   Plaintiff will probably cite in reply *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008).  In that case:  "Family Dollar's corporate office issues instruction manuals with operating policies that apply uniformly to all stores nationwide.  No matter the size of the store or the district, every detail of how the store is run is fixed and mandated through Family Dollar's comprehensive manuals."  *Id.* at 1248.  Demonstrating the individualized nature of Plaintiff's claims, three years after the *Morgan* case, the Fourth Circuit affirmed summary judgment in favor of Family Dollar on the very same issue.  *Ex parte Family Dollar Stores, Inc.*, 637 F.3d 508, 518 (4th Cir. 2011) (discussing *Morgan* and noting "while Family Dollar may have had the same policies throughout its system, the individual responsibilities of managers could well have differed.")

managers at Papa John's were exempt from the FLSA).

> ### 3. The Experiences of the Store Managers widely differ and will require an Individualized Assessment.

> #### a. The very nature of Plaintiff's claims are not compatible with collective actions.

In this case, Plaintiffs do not contend that Circle K's job description violates the FLSA by, for example, only describing non-exempt duties. (*See*, Doc. 1 ¶¶ 29-32; Clemmons, Exh. A, p. 2 Job Description (describing many exempt duties, such as recruiting, interviewing, training, and delegation)). Instead, Plaintiff's case theory is that her experience deviated from the job description as she performed overwhelmingly non-exempt tasks. (*See,* Doc. 22-5 ¶ 10).

When faced with similar arguments, multiple courts have concluded that certification is not appropriate at the initial stage. *Holt*, 333 F.Supp. 2d at 1271; *Mike v. Safeco Ins. Co. of America*, 274 F.Supp.2d 216, 221 (D. Conn. 2003) (concluding that plaintiff's argument that he performed non-administrative functions despite the fact that his job description calls for administrative functions "necessarily precludes proceeding on a collective basis."); *Aguirre v. SBC Communications, Inc.*, 2006 WL 964554 at * 7 (S.D. Tex. 2006) ("*Aguirre I*") ("Because the exempt or non-exempt status of the opt-in plaintiffs would need to

be determined on an employee-by-employee basis, litigating this case as a collective action would not be efficient.").[12]

For example, in *Aguirre*, the court denied the plaintiffs' motion for conditional certification in a misclassification case, because evaluating each claim "would require a fact-specific and individualized inquiry into each employee's daily job duties." 2006 WL 964554, *7. The court explained that "[b]ecause the exempt or non-exempt status of the opt-in plaintiffs would need to be determined on an employee-by-employee basis, litigating [the] case as a collective action would not be efficient." *Id.* Even when the plaintiffs filed a second motion for conditional certification, the court held that the plaintiffs were not "similarly situated" and that collective treatment was not appropriate. The court explained: "This is not a case in which the plaintiffs rely on a job description to support certification as a collective action. ***Instead, the plaintiffs are arguing that as a matter of fact, rather than of formal job description, they perform non-***

---

[12] *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 (S.D. Cal. 2008), * 4 (recognizing that exemption determination in the context of a putative misclassification collective action "necessarily involves a fact-by-fact inquiry in the circumstances of each employee"); *O'Donnell v. Robert Half International, Inc.* 429 F.Supp.2d 246, 250 (D. Mass. 2006), *class cert. denied*, 250 F.R.D. 77 (D. Mass. 2008). ("Under the FLSA, the question of whether an employee is properly exempted involves a fact-intensive inquiry into his/her job responsibilities and autonomy, the management style of the employee's supervisor and whether that employee worked over 40 hours per week."); *Pfohl v. Farmers Ins. Group,* 2004 WL 554834, *10 (C.D. Cal. 2004)(denying conditional certification and notice because plaintiff failed to show that he is similarly situated to the others with respect to pay and the performance of duties, and thus, the exempt or non-exempt status of many others would have to be determined on an employee-by-employee basis. "This would be inefficient and impractical, thereby defeating the purpose of a collective action.").

***managerial duties for the majority of their working hours.*** This requires an analysis of each employee's job responsibilities under the relevant exemption criteria." *Aguirre v. SBC Comm'ns, Inc.*, 2007 WL 772756, *12 (S.D. Tex. 2007) (emphasis added); *see also Holt*, 333 F.Supp.2d at 1271-72 (denying conditional certification, and noting "Plaintiffs are not pointing to a Rite Aid job description…. Instead, the Plaintiffs are arguing that as a matter of fact, rather than of formal job description, they are performing non-managerial duties for the majority of their working hours.") (*citing Mike*, 271 F.Supp.2d at 221).

Like *Aguirre*, the central question in evaluating Plaintiff's claim—and the claim of any potential opt-in—is whether the primary tasks performed on a day-to-day basis were exempt or non-exempt. Plaintiff's experience as a Store Manager differs significantly from the experiences of Fortin, Scott, S. Hall, N. Hall, Turner, Malone, and Alexander. For example, Scott operates a $10,000,000 operation (Scott ¶15); Malone and Fortin manage a training store (Malone ¶10; Fortin ¶4-5); Fortin is the Assistant Market Manager (Fortin ¶4); and Alexander managed two stores at one time (Alexander ¶3). The experiences of each Store Manager is not controlled by the job description or any single company policy, but rather dictated by the store location, store services offered, the store size, the market manager's management style, and the store managers' ability and initiative. As in the cases cited *supra,* Plaintiff's claim of FLSA misclassification requires a fact-specific,

individualized assessment of each store manager to determine whether they are exempt or not. *See also Diaz v. Electronics Boutique of America, Inc.*, No. 04-cv-0840E, 2005 WL 2654270 (W.D.N.Y. 2005) ("Although [store managers] shared the same job description, their responsibilities, in fact, may differ and thus a highly fact-specific and detail analysis of each [store manager]'s duties is required, making class treatment inappropriate.")  Based on the record evidence, such an individualized assessment would gut any benefit associated with allowing this action to proceed on a collective basis.

> **b.   Circle K is uniquely decentralized with divisions making their own respective decisions regarding pay practices.**

The Store Manager's geographic location is an additional reason to deny certification for two reasons:  (1) Store Manager experiences differ based on location and Division; and (2) Plaintiff has not presented any evidence of a common policy or practice extending outside of Alabama.  Courts often cite dissimilarities among different geographic locations as a reason for denying a motion for conditional certification or limiting the scope of the collective action. *See Aufleger v. Eastex Crude Co., 2*006 WL 2161591, *1 (N.D. Tex. 2006) (denying conditional certification where plaintiffs had limited, if any, knowledge of other locations); *Torres v. CSK Auto, Inc.*, 2003 WL 24330020 (W.D. Tex. 2003) (limiting plaintiffs' proposed nationwide class to single store because

plaintiffs' affidavits regarding practices at other locations not based on personal knowledge); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999) (limiting scope of collective action to a single location where employees worked "at different restaurants, in different states, for different managers, and, most likely, in quite different working conditions"); *Brooks v. Bellsouth Telecomm., Inc.*, 164 F.R.D. 561, 569 (N.D. Ala. 1995) (denying notice to potential plaintiffs where employees worked in separate departments and under separate supervisors).

Plaintiff presents evidence of five store managers in Alabama. The evidence does not describe ***any*** experience outside of Alabama and when the declarants ventured a guess as to operations outside of Alabama, they have been incorrect (Plaintiffs alleged all stores operate 24 hours a day; all store managers are classified as exempt; all store managers were re-classified as non-exempt at the same time). Moreover, Defendants evidence identifies significant differences in operation outside of the state of Alabama. (*supra* II.C.) In sum, Plaintiff's motion requests nationwide certification, but Plaintiff does not support the motion with any evidence of how Circle K operates outside of the four stores that Plaintiff and the opt-ins were employed. Accordingly, the geographic distinctions are another reason conditional certification should be denied.

### c.    The type of store significantly impacts a store manager's job responsibilities.

Courts hold that employees are not "similarly situated" when they are subject to varying work conditions. *Lawrence v. City of Philadelphia,* 2004 WL 945139, * 2 (E.D. Pa. 2004) (although plaintiffs all worked at the same position within the unit and had the same general job description, they worked in "different unit types, different platoons, different locations and [had] different supervisors" and thus were not similarly situated).

Store Managers describe different ways that the traits of a particular store—high volume, high risk, truck stop, training store—impact their daily job functions. High volume store managers describe an increased burden on managing their labor schedule and retaining employees. High risk store managers describe an increased burden in loss prevention responsibilities and training of employees. Store Managers of a training store bear greater responsibility for training employees. For purposes of evaluating a store manager's primary job responsibilities, these are significant (and potentially dispositive) facts that vary significantly from one store to the next, and render collective certification inappropriate.

### d.    A Store Manager's own performance and market manager impacts their autonomy.

Courts hold that employees are not "similarly situated" when they are subject to varying work conditions based on different supervisors. *Brechler v.*

*Qwest Communications Intl.*, 2009 WL 692329, * 2 (D. Ariz. 2009).  One of the singular influencing factors of the store manager's experience is the management style of his or her immediate supervisor.

Here, Market Managers describe different ways that they treat their store managers:  (1) the stronger the store manager is, the less hands on the market manager is; (2) the more experienced the store manager is, the less hands on the market manager is; (3) some market managers are micro managers and others are not; and (4) some store managers always seek approval from market managers although approval is not required.  The market managers' treatment of the Store Managers is another unique fact that requires a denial of Plaintiff's Motion. (*See* Alexander ¶3; Fortin ¶4).

> ### e.  The Gulf Coast Division's decision to re-classify the remaining Store Managers paid on a salary basis is not evidence of a common practice to justify conditional certification.

Plaintiff also argues conditional certification is appropriate because Circle K allegedly reclassified all of the Store Managers as non-exempt at the same time. This argument is both legally and factually incorrect.  First, Circle K's re-classification of store managers actually demonstrates the autonomy of the different divisions.   Store Managers in the West Coast Division and Store Managers previously employed by The Pantry were paid hourly for years before April 2016. (Pannel ¶25; Farthing ¶6). And other Circle K Divisions paid store

managers as hourly at different periods of time.  Second, another federal district court addressed a similar argument and held, "The fact that Safeco decided to re-classify all Claims Representatives, including all Field Claims Representatives, does not provide the necessary common thread [for purposes of conditional certification.]"  *Mike*, 274 F.Supp.2d at 221.  Thus, the re-classification of some store managers from exempt to non-exempt does not support collective certification.

### 4.      Alternatively, Plaintiff's Class Should be Limited to Alabama.

Collective certification should not be granted on a national basis.  Plaintiff and the four opt-ins have only worked in the State of Alabama, and have not identified a shred of evidence regarding Circle K's operations outside of the state of Alabama or outside the Gulf Coast Division. Courts routinely deny geographically broad certification and restrict the geographic scope to only those geographic areas where the plaintiffs worked or have demonstrated evidence of actual interest and commonality. *Hilley*, 2014 WL 1246364, *13 (M.D. Ala. 2014) ("because all the consents to opt-in were filed by employees from the Birmingham area, the court makes no assumption that employees outside the Birmingham Market desire to participate in this case.").[13] The sound legal

---

[13] *See also Robbins-Pagel v. Puckett, Inc.,* 2006 WL 3393706, *3 (M.D. Fla. 2006)(limiting class to Volusia County); *Trinh v. J.P. Morgan Chase & Co.,* 2008 WL 1860161, *4 (S.D. Cal.

opinions expressed in these cases should be followed here.  Thus, to the extent conditional certification is granted, it should be limited to Alabama, and certainly should not be extended beyond the Gulf Coast Division.

### E. Response to Plaintiff's Notice.

Defendants disagree with Plaintiff's proposed notice, including the content of the notice, on a number of grounds, but the Court's order regarding Plaintiff's motion for conditional certification will impact the content of the notice. Defendants are optimistic that the parties could work together to propose a notice—or at a minimum, propose a notice with limited disputed issues—if the Court grants conditional certification.  In the event the Court grants conditional certification, Defendants respectfully request a thirty day period for the parties to discuss and propose a joint notice.  In addition to objections to the content of the notice, Defendants object to the following procedures associated with the notice.

### 1.    Notice Procedure.

Defendants should not be required to produce current or former employees' names, last-known addresses, email addresses, telephone numbers, and Social Security numbers to Plaintiff's counsel due to the "privacy concerns implicit in

---

2008)(denying nationwide certification where plaintiffs all worked at one location and did not submit declarations for other locations); *Shabazz v. Asurion Ins. Serv.,* 2008 WL 1730318, *5 (M.D. Tenn. 2008)(limited class to one city where plaintiffs only included declarations from employees who worked in that city). *Davis, III v. Westgate Planet Hollywood Las Vegas, LLC.*, 2009 WL 102735 *12-14 (D. Nev. 2009) (denying request to circulate nationwide notice when plaintiff's proof is limited to specific employees at specific locations).

information derived from personnel records." *Torres v. CSK Auto, Inc.*, 2003 WL 24330020, at *3 (W.D. Tex. 2003) (denying FLSA plaintiffs' request for names, addresses, Social Security numbers and telephone numbers of putative class members based on privacy concerns).[14]

If the Court conditionally determines that similarly situated individuals exist who should be informed of this lawsuit, those individuals should be allowed to make an informed decision whether to join this lawsuit based on a Court-approved notice, not based on information provided via improper solicitations from Plaintiff and/or Plaintiff's counsel.  Thus, Defendants should be allowed to mail the notices.

Alternatively, notice should be provided using a third-party administrator in order to "ensure neutrality and integrity of the opt-in process."  Use of a third-party administrator would prevent potential improper follow-up solicitations and eliminate privacy concerns for Defendants' employees.  *Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 WL 2729187, * 5 (N.D. Cal. 2007).[15]

---

[14] *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, 2009 WL 3241790 (D. Ariz. 2009) (supplying the attorneys in this case with the phone numbers of thousands of Defendants' current and former employees seems like a needless intrusion into the privacy of these individuals and their families); *Campbell v. Pricewaterhouse Coopers, LLP,* 2008 WL 2345035 (E.D. Cal. 2008) (denying disclosure of telephone numbers where employer argued such disclosure would violate the privacy rights).

[15] *See also, Lewis v. Wells Fargo & Co*., 669 F.Supp.2d 1124, 1128 (N.D. Cal. 2009) (ordering the collective action notice to be distributed by a third-party administrator rather than plaintiff's counsel because it was more "appropriate" and noting that plaintiffs' counsel did not explain why it would be more preferable for their counsel to oversee distribution of the notice and that since the notice provides for the contact information of plaintiffs' counsel, potential class members could obtain counsel if they wished); *Torres v. CSK Auto, Inc*.,  2003 WL 24330020

## 2.    The Notice Period.

Plaintiff requests a notice period of 120 days. A 60 day opt-in period is routine in FLSA actions, and Plaintiff does not provide any explanation as to why a longer period is necessary. *See, e.g., Bah v. Shoe Mania, Inc.,* 2009 WL 1357223, at \*3 (S.D.N.Y. 2009)*; Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003) (60 days); *Bowens v. Atl. Main. Corp.,* 546 F. Supp.2d 55, 85 (E.D.N.Y.2008) (courts "have held that a sixty (60)-day period is sufficient for the return of Consent Forms").

## 3.    Posting the notice.

Plaintiff argues that in addition to mailing the notice, Defendants should post the notice in common areas. Courts routinely refuse to require defendants to post notices without some showing that mailing is ineffective, as to do so would be intrusive. *See Williams v. Omainsky,* 2016 WL 297718, \*10 (S.D. Ala. 2016); *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 500 (D. Neb. 2009) (rejecting dissemination of notice via workplace posting where "[t]here is no evidence personal mailing will be an unreliable means of delivering notice to the putative

---

(W.D. Tex. 2003) (given privacy concerns of producing contact information, the court required defendant to issue the notice to employees instead of plaintiffs' counsel); *Raddatz v. Standard Register Co*., 177 F.R.D. 446, 447-48 (D. Minn. 1997) ("[T]he very act of disclosing an employee's sensitive and personal data is highly, and frequently, an unnecessarily intrusive act – whether or not that disclosure is governed by the terms of a Confidentiality Order. The intrusiveness of the act rests in disclosure to anyone, and the fact that the information may not be openly publicized brings little comfort to the co-employee, whose most private confidences are needlessly divulged.")

plaintiffs"); *Binissia v. AMB Industries, Inc.*, 2014 WL 793111, *6 (N.D. Ill. 2014) (refusing to require posting at defendant's branch locations because such notice would be "unnecessary and overly intrusive.")  This request should be denied.

## IV.  <u>Conclusion</u>

Courts should allow collective actions only when adjudication of "common issues of law and fact arising from the same alleged ... activity" promotes efficiency and judicial economy.  The issue before the Court is whether Plaintiff produced evidence of a common practice that renders conditional certification an efficient option.  Plaintiff's argument—of common practice of classifying store managers as exempt—is factually incorrect as Defendants have classified and paid Store Managers based on different compensation plans for multiple years both within and outside of the Gulf Coast Division.  Moreover, Defendants have presented significant evidence demonstrating that Store Managers' experiences and primary job responsibilities are not determined by a common policy or practice, but instead vary widely depending upon the store location, store services offered, the store size, the market manager's management style, and the store managers' ability and initiative.  Because Plaintiff's purported class will require a review of each store manager's individual circumstances, activities, and job functions, collective treatment would be an inefficient, costly, and inappropriate endeavor.

For these reasons, the Court should deny Plaintiff's Motion for A Collective Action Pursuant to 29 U.S.C. § 216(b).

/s/ Josh C. Harrison
Christopher W. Deering (ASB-5555-I71C)
Josh C. Harrison (ASB-3775-O76H)
Ogletree, Deakins, Nash,
  Smoak & Stewart, P.C.
420 20th Street North, Suite 1900
Birmingham, AL 35203
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
christopher.deering@ogletreedeakins.com
josh.harrison@ogletreedeakins.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of November, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to the following:

Daniel E. Arciniegas
Jon C. Goldfarb
L. William Smith
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

Counsel for Plaintiff

/s/ Josh C. Harrison
Of Counsel

37