IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JENNIFER LYNN HAZEL,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | ) |
| | )   **Case No. 2:16-CV-00957-KOB** |
| | ) |
| **ALIMENTATION COUCHE-TARD,** | ) |
| **CIRCLE K STORES, INC., AND** | ) |
| **THE PANTRY, INC. d/b/a** | ) |
| **KANGAROO EXPRESS,** | ) |
| | ) |
|     **Defendants.** | ) |

**MEMORANDUM OPINION**

Plaintiff Jennifer Hazel sued Defendants Circle K Stores and The Pantry Inc. (who does business as "Kangaroo Express") alleging that the Defendants violated the Fair Labor Standards Act by misclassifying her and other similarly situated Store Managers as overtime-exempt employees.[1] Ms. Hazel has now moved the court to conditionally certify a class containing current and former Circle K and Kangaroo Express Store Managers who were paid as salaried employees at any time from June 9, 2013 until the present. The court will grant in part the motion as to the Store Managers employed within the State of Alabama at any time from June 9, 2013 until the present, but deny in part the motion as to those employed outside the state.

**I.     BACKGROUND**

Circle K is a chain of convenience stores with locations throughout the world. Circle K's parent company also owns Kangaroo Express, and is in the process of rebranding Kangaroo Express stores as Circle K stores. Circle K's operations in the United States are divided into

---

[1] Plaintiff's claims against Defendant Alimentation Couche-Tard were dismissed pursuant to Fed. R. Civ. P. 41(a). (Doc. 17).

1

separate regions. Alabama is in the Gulf Coast division.

      **A.**      **Evidence Submitted by the Plaintiffs**

In April 2016, Circle K issued a memo stating it had "decided that it will convert all Exempt Store Managers to the Hourly pay structure." The Gulf Coast Division completed the conversion during the 2016 calendar year, and. Ms. Hazel alleges Circle K misclassified Store Managers as exempt salaried employees until the reclassification occurred. The Store Manager job description remained the same despite the reclassification.

Ms. Hazel has been joined by four other Alabama Circle K Store Managers who have opted into this litigation. Each of these managers allege that they worked more than 60 hours a week and that they spent a "vast majority" of their time performing the same tasks as hourly employees, including assisting customers with transactions and performing manual labor by cleaning, stocking, and organizing the store. Because these stores were open twenty-four hours a day, any of the managers could be required to fill in for an hourly employee at any time.

The managers also testified that a Market Manager or other executive has authority over the stores' budget, payroll, store hours, merchandise selection, and other management tasks. Further, Market Managers controlled hiring and termination decisions. According to the affidavits, the Market Managers have access to video of the stores and can make management decisions based on what they see.

Because the labor budget is set by the corporate office, and that budget does not provide enough money to pay for all the hours needed for non-exempt employees to man the store, managers are required to cover the difference.  As a result, Store Managers are required to perform predominately non-exempt tasks.

      **B.**      **Evidence Submitted by the Defendants**

In response to the motion for conditional certification, Circle K submitted eighteen declarations. Five were from Human Resources Managers of Circle K's regional divisions; six were from Market Managers in the Gulf Coast Division; five were from Store Managers in the Gulf Coast Division; and one was from the Lead Customer Service Representative in the Gulf Coast Division.

Those documents establish the following facts. Market Managers visit their stores around once a week, giving feedback on the store's performance. The Market Managers treat Store Managers differently; some Market Managers encourage Store Managers to be independent, while others exercise more oversight, especially if problems start to crop up at a store or if the manager is new. Circle K's evidence suggests that differing treatment extended to personnel decisions. One Store Manager said that while she provides recommendations to her Market Manager, she is ultimately responsible for the decision to hire or fire an employee; another Market Manager said he cannot remember rejecting a Store Manager's recommendation. Circle K's evidence confirms that Store Managers perform some manual labor, but an Alabama Store Manager testified that even when he is doing that sort of work, he is still supervising the store.

Store Managers are responsible for setting the store's work schedule, and Circle K agrees that a manager's hours and responsibilities may vary based on the store needs. For example, high volume stores require more attention to scheduling and high risk stores require more focus on loss prevention.

## II.     LEGAL STANDARD

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that "any one or more employees similarly situated" may maintain an action against an employer for violations of the FLSA. Section 16(b) further provides that "[n]o employee shall be a party Plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." The Eleventh Circuit has held that "[t]he 'opt-in' provisions of [29 U.S.C. 216(b)] convey upon a named plaintiff . . . the right to try to seek damages in the amounts allegedly due and not paid by the employer in accordance with the [FLSA], on behalf of himself or herself and also on behalf of other employees 'similarly situated.'" *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991).

A plaintiff bears the burden of demonstrating a "reasonable basis" for his claim of class-wide harm. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)). A plaintiff "may meet this burden, which is not heavy, by making substantial allegations of class-wide [harm], that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Id.* (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406–07 (D.N.J. 1988).

The Eleventh Circuit recommends that district courts adopt a two-tiered approach to notification and certification of opt-in collective actions under 29 U.S.C. § 216(b), addressing at two different stages the question of whether plaintiffs are "similarly situated." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001). The Eleventh Circuit described the two-tiered approach as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision -- usually based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action

> throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives -- i.e. the original plaintiffs -- proceed to trial on their individual claims.

*Hipp*, 252 F.3d at 1218–19 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)).

The Eleventh Circuit noted that the "two-tiered approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases." *Id*. at 1219.  The Eleventh Circuit, however, also noted that "[n]othing in our circuit precedent . . . requires district courts to utilize this approach. The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court." *Id.* This court has utilized the two-tiered approach in other § 216(b) cases. *See, e.g., Briggins v. TRI Staffing, Inc*., No. CV-08-BE-1861-E, 2009 WL 10635663, at *1 (N.D. Ala. June 8, 2009).

To prevail on a motion seeking conditional certification of a collective action, a plaintiff must show that (1) other employees exist who desire to opt-in, and (2) the employees are similarly situated regarding their job requirements and pay provisions. *Hipp*, 252 F.3d at 1219; *Dybach*, 942 F.2d at 1567–68.

The "similarly situated" requirement of 29 U.S.C. § 216(b) "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79

5

F.3d at 1095. To show that other employees are "similarly situated" for purposes of first-tier consideration for conditional certification, plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (citing *Grayson*, 79 F.3d at 1101). "[A] unified policy, plan, or scheme . . . may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Grayson*, 79 F.3d at 1095.

### III. DISCUSSION

Circle K does not dispute that other potential plaintiffs wish to opt-in to this litigation, but does argue that the class members are not similarly situated.

#### A. Reasonable Basis for Belief of Other Similarly Situated Plaintiffs

Circle K challenges whether Ms. Hazel has met her burden of demonstrating a reasonable basis for the belief that she and the potential class members are similarly situated. The Eleventh Circuit has not provided a specific definition of "similarly situated." *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–60 (11th Cir. 2008) ("[W]e have not adopted a precise definition of ['similarly situated'].") Accordingly, courts consider a number of factors, including (1) job title; (2) geographic location; (3) temporal proximity of the FLSA violations alleged; (4) the nature and decisional source of any contested policies and practices; and (5) the similarity of the defendant's treatment of the plaintiffs and potential plaintiffs. *See Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (listing the factors). The court will consider these factors to determine whether Ms. Hazel has a reasonable basis for believing similarly situated plaintiffs exist.

##### 1. Job Title

Ms. Hazel seeks to certify a class consisting of current and former "Store Managers"

whom Circle K paid as hourly employees at any time from June 9, 2013 to the present. Every Circle K store has a Store Manager position, which is the job title that Ms. Hazel and the other opt-in plaintiffs hold or held. Further, Circle K had a uniform job description for all Store Managers. Therefore, the court finds that the Plaintiffs and members of the proposed class share the same job title. This factor weighs in favor of certifying the proposed class.

### 2. *Geographic Location*

Ms. Hazel and the opt-in plaintiffs all manage Circle K stores in Alabama. However, the proposed class would cover Store Managers who were paid as hourly employees nationwide. The court finds that the substantial majority of potential class members do not share a geographical location with the Plaintiffs. Therefore, this factor weighs against certifying the class as proposed.

### 3. *Temporal Proximity*

Ms. Hazel, the opt-in plaintiffs, and the proposed class members were Store Managers during the same time period—the three years prior to Plaintiff's filing her Complaint and the present. Therefore, the court finds that the close temporal proximity between the claims of the plaintiffs and the proposed class favors certifying the class.

### 4. *Nature and Decisional Source of Contested Policy*

In response to the motion for conditional class certification, Circle K argues that its management structure is decentralized, with regional divisions making their own decisions regarding pay practices. However, Circle K's decision to reclassify its Store Managers was a nationwide action. True, some Store Managers were already hourly employees. But after Circle K's decision, *every* Store Manager became an hourly employee. Although Circle K may generally have a regional apparatus, this decision was made through centralized structure. All Store Managers who were paid a salary were switched to an hourly compensation system.

Therefore, the court finds that this factor favors certifying the class. However, the court notes that the Plaintiffs have not provided evidence from outside the Gulf Coast Division that Store Managers are forced to perform non-exempt work because of constricted labor budgets.

     5.    *Similarity of Treatment*

The Plaintiffs have met their lenient burden of demonstrating that they and potential class members are similarly situated by "successfully engag[ing] defendants' affidavits." *Grayson*, 79 F.3d at 1097. The evidence Ms. Hazel submitted shows a reasonable basis for concluding she and the class members are similarly situated. The affidavit testimony establishes a common theory: limited labor budgets require Store Managers to devote a substantial amount of their time to non-exempt tasks. The Store Manager job description, which requires that Store Managers perform the roles of other store employees, reinforces this theory. Taken with Circle K's complete conversion of Store Managers to an hourly pay structure without any corresponding change in the job description, these facts support a reasonable belief that the proposed class members were victims of an unlawful practice.

Circle K argues that "the very nature of Plaintiff's claims are not compatible with collective actions" because "an individual assessment would gut any benefit associated with allowing this action to proceed on a collective basis." (Doc. 30 at 24, 27). However, "[j]ust because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263 (11th Cir. 2008). The court is not persuaded that the claims asserted in this action are *inherently* incompatible with a collective action. Like the *Family Dollar* case, Circle K Store Managers appear to share "factual details with respect to their job duties and day-to-day work." *Id*.

The court also believes that the need for individualized inquiries should be addressed at

step two of the certification process, not step one. *See Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1238 (S.D. Ala. 2008) ("Those factual disputes may properly be addressed after discovery at the second stage . . . but they do not constitute a valid basis for denying conditional class certification today."). The court has applied this principle to past cases, and sees no reason to depart from doing so here. *See Briggins*, No. CV-08-BE-1861-E, 2009 WL 10635663, at *5 n.5 (noting that the defendant's "arguments raise factual matters not appropriate for consideration at this notice stage of the litigation.").

Whether Store Managers are similarly situated enough to warrant a collective action is best decided when discovery has been conducted on that issue. If discovery reveals, as in the *Family Dollar* case, that the class members share common job traits, then the class may proceed to trial. If discovery uncovers the opposite, the court has no doubt that Circle K will move to decertify the class. The Eleventh Circuit endorsed this process in *Hipp*, and the court finds that procedure is the best way to move forward with this case.

However, the court will limit the conditional certification to the Store Managers in Alabama who were classified as exempt employees at any time after June 9, 2013. Circle K has a regional management structure, and Ms. Hazel has produced no evidence from any manager outside her region. In cases where courts have certified nationwide classes, such evidence from across the country was before the court. *See*, *e.g.*, *Family Dollar*. 551 F.3d at 1242 ("By October 2002, 142 Store Managers from different states had filed consent forms"). In this case, the court has sufficient evidence that the Gulf Coast Division's policies have potentially violated Store Managers' rights in a similar manner, but it cannot conclude that is the case with respect to a nationwide class. Plaintiff and the four individuals seeking to opt-in to this litigation have only been Circle K Store Managers within Alabama. The court will not assume that Store Managers

employed outside Alabama desire to participate in this case when none have come forward. *See Hilley v. Tacala, LLC*., No. 2:12-CV-2691-SLB, 2014 WL 1246364, at *13–14 (N.D. Ala. 2014) (limiting conditional class to employees within Birmingham area because all consents to opt-in were filed by employees within that specific market). Therefore, the court will grant in part the motion as to Store Managers employed within the State of Alabama since June 9, 2013, but deny in part the motion as to Store Managers employed outside the state.

### B.     Court Facilitated Notice

Given the court's decision to certify a class limited to Store Managers in Alabama who were classified as exempt employees at any time after June 9, 2013, the court will order the parties to submit to the court a joint proposal for facilitating notice to the conditional opt-in class within thirty days. By separate order, the court will set a status conference to discuss the proposal.

## IV.    CONCLUSION

Because Ms. Hazel has shown a reasonable basis for class-wide harm, the court will grant the motion for conditional certification and court-facilitated notice to Store Managers in Alabama who were classified as exempt employees at any time after June 9, 2013. The court will order the parties to meet and confer about the notice and submit a joint proposal.

**DONE** this 25th day of August, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE